UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Criminal No. 17-3190 MCA |
| ) | |
| v. ) | Counts 1-3: 18 U.S.C. § 1343 |
| ) | (Wire Fraud) |
| CARLA SENA, ) | |
| ) | Count 4: 18 U.S.C. § 1031(a)(2) |
| Defendant. ) | (Major Fraud) |
| ) | |
| ) | Counts 5-9: 18 U.S.C. § 1956(a)(1)(B) |
| ) | (Money Laundering) |
| ) | |
| ) | Counts 10-11: 18 U.S.C. § 1957(a) |
| ) | (Money Laundering) |
| ) | |
| ) | Forfeiture Notice |

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO
NOV 14 2017
MATTHEW J. DYKMAN
CLERK

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO
NOV 14 2017
MATTHEW J. DYKMAN
CLERK

**INDICTMENT**

THE GRAND JURY CHARGES:

I.   **GENERAL ALLEGATIONS**

   A.   **Relevant Entities**

At all times relevant to this Indictment:

1.   Sandia Corporation ("Sandia") was the prime operator of Sandia National Laboratories ("SNL"). SNL is a federally funded nuclear research and development facility located in Albuquerque, New Mexico. Although SNL is owned by the federal government under sponsorship by the United States Department of Energy ("U.S. DOE"), SNL was exclusively administered and operated by Sandia.

2.   New Mexico Express Movers, LLC ("Movers LLC") was a company that provided moving services to SNL. Movers LLC was created and operated by the defendant CARLA SENA ("SENA"). Over the relevant period, Movers LLC bid on, and was awarded, a tax-payer funded

1

contract ("the Contract") to provide moving services for SNL. The Contract had a projected value of $3.5 million, and Movers LLC ultimately received $2.3 million under the Contract.

3. Company 1 was a company that provided construction services and was owned by SENA's father. SENA exercised control over the finances of Company 1.

4. Company 2 was another company owned by SENA's father, and SENA exercised control over the finances of Company 2.

**B.   Defendant and Relevant Parties**

5. Defendant SENA was a procurement employee of Sandia from 2006 to 2017. One of SENA's roles at SNL was as a Sandia Contracting Representative ("SCR"). In this capacity, SENA had the authority to (1) establish contract award criteria and bidding specifications, (2) create binding contractual obligations for SNL, and (3) make changes to existing contracts on behalf of SNL, all of which were funded with federal public funds. Once a contract was awarded, SENA remained involved in the execution of the contract and used her position to facilitate payments from SNL to Movers LLC pursuant to the Contract.

6. Person A was an employee of Company 1.

7. Person B was the nominal owner of Movers LLC.

8. Person C was an employee of NMEM Enterprises LLC ("NMEM") and then ISLS LLC ("ISLS"), both of which were successor entities of Movers LLC.

**II.   THE SCHEME**

**COUNTS ONE THROUGH THREE**
**(Wire Fraud - 18 U.S.C. § 1343)**

9. The allegations contained in paragraphs 1 through 8 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

10. From in or about December 2010, and continuing through in or about April 2016, in the District of New Mexico, and elsewhere, the defendant,

**CARLA SENA,**

devised and intended to devise a scheme to defraud the United States, including the U.S. DOE, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

A. **Purposes of the Scheme**

11. It was a purpose of the scheme for SENA to use her official position with Sandia to enrich herself through fraud by awarding the Contract to Movers LLC.

12. It was further a purpose of the scheme for SENA to conceal her involvement with Movers LLC to facilitate the award of the Contract to Movers LLC and to allow for continued payments to Movers LLC under the Contract.

B. **Manner and Means of the Scheme**

13. The manner and means by which the defendant carried out the scheme included, but were not limited to, the following:

    a. SENA manipulated the procurement process at SNL to ensure the award of the Contract to Movers LLC.

    b. To conceal her direct involvement in Movers LLC, SENA used her family members and acquaintances, and their personal identifying information, to create Movers LLC.

    c. To further conceal her involvement in Movers LLC, SENA used the names of family members and other third parties to submit bid documents and other related communications to SNL.

3

        d.      Through Movers LLC, SENA submitted and caused to be submitted requests for payments to SNL under the Contract.

        e.      In her role at SNL, SENA contacted Sandia employees to ensure that Movers LLC would be paid for services performed under the Contract.

### C. Acts in Furtherance of the Scheme

14.    On or about November 19, 2010, in her role as SCR, SENA formally issued Request for Quotation No. 58281 ("the RFQ") and set the response deadline for December 10, 2010. The RFQ called for the procurement of moving services within SNL, and contract number 1095780 (*i.e.*, the Contract), which was later executed pursuant to the RFQ, had an anticipated cumulative value of $3.5 million. SENA set the award criteria for the RFQ as "Low Net Price," which meant that SNL would necessarily award the Contract to the lowest-priced bid of all qualifying bids. A qualifying bid was one that met all technical and mandatory requirements. SENA served as the point of contact for all bidders and conducted a preliminary review of all bids to ensure compliance with the mandatory requirements that she drafted for the RFQ.

15.    SENA included the following five mandatory criteria for each bidding company in the RFQ:

        a.      The company must certify in writing that it is a small business with less than $18.5 million in annual revenue;

        b.      The company must (1) have at least two years of experience providing moving services and (2) furnish contact information for three customers whom the company has serviced in the preceding twelve-month period;

        c.      The company must submit a safety plan that meets SNL standards and requirements;

        d.     The company must have a local office in Albuquerque, New Mexico; and

        e.     The company must provide a Certificate of Insurance reflecting general liability coverage.

16.    SENA included in the RFQ the notation that failure to meet any of the foregoing requirements would result in disqualification.

17.    SNL procurement guidelines required a Team Review phase prior to the award of the Contract. As the SCR assigned to the RFQ, SENA served as one of three Sandia employees who conducted the Team Review phase. As the SCR assigned to the RFQ, however, only SENA had the authority to select which bids advanced to the Team Review phase.

18.    On December 2, 2010, SENA formed Movers LLC, just eight days before the deadline for bids for the RFQ. In the incorporation papers for Movers LLC, SENA listed the company address as 2270-D Wyoming Boulevard, NE #318, Albuquerque, NM 87112, which is a rental mailbox located in a UPS Store. SENA had previously rented that mailbox under the name "Brittany J Lopez" using New Mexico Driver's License No. 50056XXXX. This driver's license was issued by the State of New Mexico to SENA's daughter. SENA had access to her daughter's driver's license number. SENA paid for the rental mailbox using funds traced to a personal bank account jointly owned by SENA and her then-husband.

19.    In her role as the SCR in charge of the RFQ, SENA subsequently entered the address for this rental mailbox into SNL's procurement database as Movers LLC's official business address and also listed this official business address in Movers LLC's bid submission to SNL on December 10, 2010.

20.    SENA created the email address nmexpressmovers@gmail.com to be used as Movers LLC's official email address for business with SNL. The nmexpressmovers@gmail.com

account was registered and activated from the same IP address that was used to register and activate SENA's personal email account. The two email accounts were registered and activated within five minutes of each other.

21.  To ensure that Movers LLC would receive the Contract, SENA made several fraudulent misrepresentations in Movers LLC's response to the following four out of five mandatory requirements in the RFQ:

    a.  SENA falsely claimed that Movers LLC had provided services in the preceding two years to three entities, even though Movers LLC never performed work for these purported customers.

    b.  SENA submitted a Safety and Health Plan dated December 2008, but Movers LLC neither existed nor operated at that time.

    c.  SENA falsely claimed that Movers LLC had a local office with 24-hour operability. However, the address that SENA provided for Movers LLC corresponded to the above-referenced mailbox at a UPS Store.

    d.  SENA used her position as the SCR for the RFQ to access a competitor's bid to obtain a Certificate of Insurance that the competitor submitted in response to the RFQ. SENA then altered the Certificate of Insurance and replaced the competitor's name with Movers LLC's, even though Movers LLC did not have an insurance policy with the insurance carrier identified in the Certificate of Insurance.

22.  On December 10, 2010, SENA submitted Movers LLC's initial bid, which included these fraudulent misrepresentations.

23.  In the cover letter enclosing Movers LLC's bid to SNL—dated December 10, 2010, and addressed to SENA as the SCR for the RFQ—SENA identified Movers LLC's owner as

Person A. Person A had no knowledge of or involvement in Movers LLC but, at the time, worked for Company 1.

24. On January 21, 2011, SENA used the nmexpressmovers@gmail.com account to submit Movers LLC's "best and final" price offer in response to the RFQ.

25. SENA subsequently used inside information from competing bids for the RFQ, which she secured through her position of trust at Sandia, to ensure that Movers LLC's revised bid prevailed over all others as the lowest-priced qualifying bid.

26. Before the Team Review phase, SENA disqualified a company that underbid Movers LLC by nearly $400,000 for not providing adequate client references for the preceding twelve-month period, which was one of the mandatory technical requirements of the RFQ that SENA had set.

27. Following the Team Review phase, Sandia reopened the bidding process so that all bidders—including the bidder that SENA had sought to disqualify—could amend their responses to more accurately respond to the mandatory requirements and submit their "best and final" price offer. SENA, who personally received each competitor's "best and final" price offer via email to her SNL email account, waited until all but one competitor had submitted their revised pricing before emailing Movers LLC's revised price from nmexpressmovers@gmail.com to her SNL email account, just fourteen minutes before the deadline. The only competitor that submitted its revised pricing after SENA emailed Movers LLC's revised bid was significantly higher than Movers LLC's and was submitted after the 12:00 p.m. deadline.

28. SENA sent Movers LLC's revised bid via email from nmexpressmovers@gmail.com, with the sender listed as "Brittany J. Lopez." This revised bid was lower than the bids of all of its competitors.

29. As a direct result of SENA's fraudulent acts and misrepresentations, Movers LLC submitted the lowest-priced bid of all qualifying bids, virtually ensuring the award of the Contract to Movers LLC.

30. On February 16, 2011, SENA, as the SCR, awarded the Contract to Movers LLC.

31. On February 17, 2011, one day after Sandia awarded the Contract to Movers LLC, SENA used Person A's name and personal identifying information to open a Movers LLC bank account at Wells Fargo. Because SENA had access to Company 1's records and at times handled the payroll for Company 1's employees, SENA had access to Person A's personal identifying information, including Person A's social security number.

32. SENA used her position to ensure that Movers LLC would receive payment under the Contract. On May 14, 2012, SENA e-mailed a Sandia employee requesting payment to Movers LLC for three invoices totaling approximately $25,500. On March 5, 2013, SENA e-mailed another Sandia employee requesting payment for an invoice dated March 1, 2013, also for services performed under the Contract.

33. Between in or about May 2011 and in or about April 2016, Movers LLC—which later became NMEM and then ISLS—received approximately $2.3 million in federal funds pursuant to the Contract.

34. SENA filed annual conflict of interest disclosure forms from 2006 to 2015 with Sandia, and SENA did not disclose and willfully concealed her involvement in Movers LLC, NMEM, and ISLS.

**D.     Execution of the Scheme**

35. On or about each of the dates set forth below, in the District of New Mexico and elsewhere, SENA, for the purpose of executing the scheme described above, caused to be

transmitted by means of wire communication in interstate commerce the signals and sounds described below; that is, SENA caused the Federal Reserve Bank in the Commonwealth of Virginia to wire funds to Sandia's account in the State of New Mexico to cover payments fraudulently obtained by SENA on behalf of Movers LLC, including payments in the amounts listed below:

| Count | Date of EFT (on or about) | Amount |
|---|---|---|
| 1 | December 21, 2012 | $26,002.00 |
| 2 | March 13, 2013 | $9,778.25 |
| 3 | December 26, 2014 | $22,419.50 |

All in violation of Title 18, United States Code, Section 1343.

## COUNT FOUR
### (Major Fraud against the United States - 18 U.S.C. § 1031(a)(2))

36. The allegations contained in paragraphs 1 through 35 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

37. On or about December 10, 2010, in the District of New Mexico, the defendant,

**CARLA SENA,**

knowingly executed and attempted to execute the scheme and artifice described above with the intent to defraud the United States, including the U.S. DOE, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, in the procurement of property and services as a subcontractor on a contract valued in excess of $1,000,000 and in connection with a prime contract with the United States that was also valued in excess of $1,000,000.

All in violation of Title 18, United States Code, Section 1031(a)(2).

## COUNTS FIVE THROUGH NINE
### (Money Laundering - 18 U.S.C. § 1956(a)(1)(b)(i))

38.     The allegations contained in paragraphs 1 through 37 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

39.     In addition to the conduct set forth above, between in or about December 2011 and in or about April 2015, SENA transferred at least $643,000 of the fraudulently obtained federal funds via negotiated checks from Movers LLC's and its successors' bank accounts to Company 1, the company owned by SENA's father, and Company 2, another company owned by SENA's father. All of these bank accounts were maintained at banks in the United States whose deposits were insured by the Federal Deposit Insurance Corporation. SENA had signatory authority over and access to the bank accounts held by both Company 1 and Company 2.

40.     Between in or about June 2013 and in or about February 2015, SENA deposited five checks from NMEM's bank account with Los Alamos National Bank to Company 1's bank account. These funds were all derived from the Contract fraudulently obtained by Movers LLC. Four of the five checks bore the signature of Person B; the fifth check bore the signature of Person C. Neither Person B nor Person C, however, ever signed or issued any checks for Company 1.

41.     Prior to the issuance of these checks, SENA asked and obtained from Person B and Person C a stamp of each individual's signature. SENA used these stamps to sign the checks that she deposited in Company 1's bank account.

42.     SENA deposited these checks in Company 1's accounts with a restricted endorsement of "For Deposit Only."

43.     From the SNL funds (1) paid directly to Movers LLC, NMEM, and ISLS; and (2) subsequently deposited via negotiated checks to Company 1 and Company 2, SENA and SENA's family members benefited personally from the fraudulently obtained funds, all while SENA

managed to conceal her direct involvement in Movers LLC and its successors through the life of the Contract. At least $600,000 of this revenue has been disbursed to SENA personally.

44. On or about the dates listed below, in the District of New Mexico and elsewhere, the defendant,

**CARLA SENA,**

knowing that the property involved in the financial transactions listed below represented the proceeds of some form of unlawful activity, knowingly and willfully conducted and caused to be conducted the financial transactions designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of unlawful activity, which was wire fraud in violation of Title 18, United States Code, Section 1343, and each transaction affecting interstate commerce, in that the defendant withdrew funds from the bank account at the financial institutions identified below:

| Count | Date (on or about) | Financial Transaction | Total Amount of Transaction |
|---|---|---|---|
| 5 | June 5, 2013 | Deposit of check #2073, drawn on Los Alamos National Bank account xxx1012, an NMEM account, into Los Alamos National Bank account xxx8601, for Company 1 | $20,000 |
| 6 | June 24, 2013 | Deposit of check #2076, drawn on Los Alamos National Bank account xxx1012, an NMEM account, into Los Alamos National Bank account xxx8601, for Company 1 | $35,000 |
| 7 | July 3, 2013 | Deposit of check #2100, drawn on Los Alamos National Bank account xxx1012, an NMEM account, into Los Alamos National Bank account xxx8601, for Company 1 | $12,500 |
| 8 | July 26, 2013 | Deposit of check #2082, drawn on Los Alamos National Bank account xxx1012, an NMEM account, into Los Alamos National Bank account xxx8601, for Company 1 | $20,000 |

| 9 | February 12, 2015 | Deposit of check #2119, drawn on Los Alamos National Bank account xxx1012, an NMEM account, into Los Alamos National Bank account xxx8601, for Company 1 | $15,000 |

All in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

### COUNTS TEN THROUGH ELEVEN
### (Money Laundering - 18 U.S.C. § 1957(a))

45. The allegations contained in paragraphs 1 through 44 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

46. On or about the following dates, in the District of New Mexico and elsewhere, the defendant,

### CARLA SENA,

did knowingly and willfully engage in a monetary transaction in criminally derived property of a value greater than $10,000.00 which was derived from specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Sections 1343, to wit; on or about the dates alleged below, SENA issued, or caused to be issued, checks, on the dates set forth below, for the amounts set forth below and to the entities set forth below:

| Count | Date (on or about) | Payor | Check No. | Amount | Payee |
|---|---|---|---|---|---|
| 10 | June 21, 2013 | Los Alamos National Bank account xxx8601, a Company 1 account | 9401 | $10,414.61 | Landmark Title |
| 11 | June 25, 2013 | Los Alamos National Bank account xxx8601, a Company 1 account | 6 | $30,000 | Los Alamos National Bank |

All in violation of Title 18, United States Code, Section 1957.

## FORFEITURE ALLEGATIONS
### (Wire Fraud - 18 U.S.C. §1343)

1. The allegations contained in Counts One, Two, and Three of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. Upon conviction of the offense in violation of Title 18, United States Code, Section 1343 set forth in Counts One, Two and Three of this Indictment, the defendant, CARLA SENA, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense(s). The property to be forfeited includes, but is not limited to, approximately $2.3 million, representing the total amount of proceeds obtained directly or indirectly as a result of such violation and/or traceable to such offense.

3. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title

21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to 18 U.S.C. §981(a)(1)(C) and 28 U.S.C. §2461(c).

**FORFEITURE ALLEGATIONS**
**(Money Laundering - 18 U.S.C. §§ 1956 and 1957)**

1. The allegations contained in Counts Five through Eleven of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 982(a)(1).

2. Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an offense in violation of Title 18, United States Code, Section 1956 or 1957, the defendant, CARLA SENA, shall forfeit to the United States of America any property, real or personal, involved in such offense, and any property traceable to such property. The property to be forfeited includes, but is not limited to, the following: approximately $643,000 representing the total amount of proceeds involved in such offense and/or traceable to such property.

3. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title

21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

/s/
_____
Foreperson

ANNALOU TIROL
Acting Chief, Public Integrity Section
Criminal Division
U.S. Department of Justice

_____
VICTOR R. SALGADO
REBECCA MOSES
Trial Attorneys
Public Integrity Section
Criminal Division
U.S. Department of Justice